IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RENASANT BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 12-0689-WS-C |
| | ) | |
| PARK NATIONAL CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the defendants' motion to dismiss and embedded motions for more definite statement and to strike jury demand. (Doc. 23). The parties have filed briefs in support of their respective positions, (Docs. 24, 29, 30, 33), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion to dismiss is due to be granted in part and denied in part, that the motion for more definite statement is due to be denied, and that the motion to strike jury demand is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), in 2005 non-party Vision Bank ("Vision") made a $16 million loan ("the Loan") to non-party Neverve, LLC ("Neverve"), secured by certain realty and guarantied by Neverve's members. Vision then sold a participation interest in the loan to non-party Crescent Bank and Trust ("Crescent") for $5 million, with the parties' obligations memorialized in a written agreement ("the Agreement"). The Agreement has been renewed periodically but without substantial change.

In 2007, Vision became a wholly owned subsidiary of defendant Park National Corporation ("Park").  In July 2010, Crescent failed and the plaintiff acquired Crescent's participation interest and other assets through a purchase and assumption agreement ("P&A") with the FDIC.  In or after December 2011, Park sold certain "good" assets of Vision to non-party Centennial Bank.  In February 2012, Park merged Vision into defendant SE Property Holdings, LLC ("SEPH"), another wholly owned subsidiary of Park, and Vision ceased to exist.  Among the "bad" assets retained by Vision and transferred to SEPH was the Loan.

The Loan was long troubled, and it fell into default for non-payment no later than December 2011.  By that time, the value of the collateral had collapsed along with the Florida real estate market, and the guarantors' ability to pay had deteriorated.  The Loan matured in June 2012.  The Loan remains unpaid and at least partially unpayable, although SEPH has filed suit against Neverve and the guarantors.

The complaint includes a litany of wrongdoing by the defendants leading to this situation and to the plaintiff's losses on its participation interest.  The complaint then asserts the following causes of action against the designated defendants:

- Count One        Breach of contract        Park, SEPH
- Count Two        Fraud                     Park
- Count Three      Suppression               Park
- Count Four       Fraud                     Park, SEPH
- Count Five       Suppression               Park, SEPH
- Count Six        Gross negligence          Park, SEPH
- Count Seven      Wantonness                Park, SEPH
- Count Eight      Interference with         Park
                   contractual relations

**DISCUSSION**

The defendants seek dismissal under Rules 12(b)(6) and 9(b).  They seek a more definite statement under Rule 12(e), and they seek to strike the jury demand pursuant to a contractual jury waiver provision.

**I.  Motion to Dismiss.**

Most of the defendants' arguments target specific counts or portions of counts.  Their only global argument is that the complaint should be dismissed in its entirety for lack of standing.

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2).  Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002).  It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule.  *Twombly*, 550 U.S. at 555.  There must in addition be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...."  *Id.*  That is, the complaint must allege "enough facts to

state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id.* But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

## A. Standing.

The defendants assert that the complaint fails to allege any "cognizable injury" that is "fairly traceable" to the defendants' conduct. (Doc. 24 at 8-11). *See generally Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1257 (11th Cir. 2012) (reviewing the constitutional elements of standing).

A "cognizable injury" for purposes of standing is "an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Georgia Latino Alliance*, 691 F.3d at 1257 (internal quotes omitted). The "fairly traceable" requirement excludes injury that is "the result of the independent action of some third party not before the court." *Id.* (internal quotes omitted).

As to each count, the complaint alleges damage in three broad forms, each allegedly resulting from the defendants' challenged conduct: (1) the plaintiff's participation interest was not repurchased; (2) the value of the collateral securing

the Loan deteriorated, and it was sold for taxes; and (3) the potential recovery from the guarantors was severely limited.  (Doc. 1 at 28-38).   By virtue of its participation interest, the plaintiff was exposed to a seven-figure loss on the Loan should it go in default (as it did).[1]  The plaintiff's bulwark against this catastrophe was the collateral and the guaranties, and its fail-safe was repurchase of its participation interest.  The complaint alleges that the defendants' conduct removed all this protection, ensuring that the plaintiff took a bath on the Loan.  These allegations on their face would appear to satisfy the challenged elements of standing, especially since, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (internal quotes omitted).  The defendants, however, gamely argue otherwise.

As to the failure to repurchase the plaintiff's participation interest, the defendants argue that the complaint fails to allege facts that would trigger such a contractual obligation.  (Doc. 24 at 8-9).  As the plaintiff notes, this argument does not go to standing at all, but to the plaintiff's ability to prove that a breach actually occurred.  But the argument fails for other reasons as well.

The complaint alleges that the Agreement gives the plaintiff the right to demand repurchase of its participation interest if any default in the Agreement is not cured within 30 days after notice from the plaintiff specifying the default. (Doc. 1 at 5-6).  The defendants note that the Agreement elsewhere requires that all notices be given in writing, and they deny that the complaint alleges such notice.  (Doc. 24 at 9).  But the complaint alleges that the plaintiff "made formal demand" for repurchase, "citing multiple breaches of the Participation Agreement," and it then clarifies that this formal demand was made by "letter."

---

[1] Since the FDIC shares in losses under the Agreement to some unidentified degree, (Doc. 1, ¶ 62), the plaintiff's potential loss would be something less than $5 million.

(Doc. 1, ¶¶ 96, 98).  A letter would of course satisfy any requirement that notice be written.

The complaint also alleges that the Agreement gives the plaintiff a repurchase option if "a proceeding is commenced which involves the dissolution, termination of existence, insolvency, or business failure of" Vision.  (Doc. 1 at 6).  The defendants assert without explanation that there was no proceeding and that the complaint alleges none.  (Doc. 24 at 10).  The plaintiff responds that "proceeding" is an undefined term, that the decision to terminate Vision and the execution of that decision under pressure from the FDIC thus may constitute a proceeding under the Agreement, and that the complaint alleges the decision and its execution.  (Doc. 29 at 20).  In reply, the defendants posit that these allegations are worthless without an explicit statement that the decision and its execution constitute a proceeding within the contemplation of the Agreement, (Doc. 30 at 3), but they offer no support for the remarkable proposition that a pleading must not only state the facts but explain their import as well.  The defendants also propose that "proceeding" be confined to a formal setting, (*id*. at 3 n.1), but their six-line argument is far too skeletal to carry the day, especially as it was withheld until their reply brief.

As to the deterioration and loss of the collateral, the defendants – again in a single sentence unencumbered by analysis or authority – fault the complaint for not explaining how their alleged conduct prevented the plaintiff from taking action to protect the collateral and for not alleging that the plaintiff had a right to take protective action.  (Doc. 24 at 10).  But the complaint expressly alleges that the plaintiff asked for confirmation that property taxes on the collateral had been paid, that it was falsely told they had been, and that the property was then sold for taxes. (Doc. 1, ¶¶ 73, 79, 88, 94, 95).  The complaint also expressly alleges that the defendants misrepresented the tax situation and that the plaintiff, in reliance on these misrepresentations, refrained from taking steps to protect itself with regard to the collateral – obviously, by having the taxes paid or the consequences of non-

6

payment delayed.  (*Id.*, ¶¶ 131, 133).[2]  The defendants' alleged conduct thus prevented the plaintiff from taking this protective action by hiding from the plaintiff the need for such action.

The defendants offer no authority for the proposition that a complaint must expressly allege the plaintiff's right to take action.  On the contrary, they admit that the complaint need only provide factual material sufficient to make plausible the plaintiff's assertion of the defendants' liability.  (Doc. 24 at 5-6).  The allegation that the plaintiff carried a $5 million participation interest in the loan, with all its attendant risks, renders it far more than plausible that the plaintiff had a right to protect its investment by taking steps to protect the collateral.  Had the defendants pointed out some legal or contractual impediment to the plaintiff taking such action, they might have canceled the facial plausibility of the plaintiff's right, but they have not done so.

As to the limited potential recovery from the guarantors, the defendants argue that the complaint identifies only a future, conjectural injury.  (Doc. 24 at 10).  The complaint alleges that, in reliance on the defendants' assurances, the plaintiff took no action before a guarantor sold assets that could have been available to satisfy his guaranty, "thereby decreasing the likelihood of repayment of the participation interest" and rendering "the potential recovery from the Guarantors … severely limited."  (Doc. 1, ¶ 135).  The defendants seize on the words "likelihood" and "potential," read in isolation, as demonstrating that only a future, conjectural injury has been alleged.  By doing so, they miss the meaning of the allegations and fail to appreciate that the plaintiff's loss has already occurred.  The Loan is in default, the collateral has been sold for taxes, and the defendants refuse to repurchase the plaintiff's participation interest.  Under such circumstances, the plaintiff's only hope of recovery – to which it is now entitled –

---

[2] By way of example only, the plaintiff could have pressured Neverve, the guarantors and/or the defendants to pay the taxes, or it could have paid the taxes itself. Or, the plaintiff could have sought additional time from the relevant taxing authorities.

is from the guarantors.  The complaint, however, alleges that the debt exceeds the guarantors' ability to pay, that is, that the potential recovery from them is – today – "severely limited."  The guarantors' obligation to pay the full debt exists in the present, as does their inability to do so.  That is a present injury by any definition. The only thing that lies in the future, that remains "potential," is the guarantors' actual payment of what little they can.

For the reasons set forth above, the defendants are not entitled to dismissal for want of constitutional standing.

### B.  Breach of Contract.

The defendants argue that Park should be dismissed as a defendant because it is not a party to the Agreement.  They also argue that portions of the claim should be dismissed because they depend on the breach of obligations the Agreement does not impose.  (Doc. 24 at 11-14).

### 1.  Park as a defendant.

The Agreement was signed by Vision and Crescent.  The plaintiff succeeded to Crescent's interests under the Agreement by P&A.  (Doc. 1, ¶ 62). Vision, after selling off certain assets, was merged into SEPH, which became Vision's successor.  (*Id*., ¶¶ 49, 52).  While it existed, Vision was a wholly owned subsidiary of Park.  (*Id*., ¶ 26).  SEPH likewise was a wholly owned subsidiary of Park.  (*Id*., ¶ 50).

There is no written agreement between Park and either Crescent or the plaintiff.  Moreover, the plaintiff agrees that Park cannot be bound by the Agreement simply because it owned Vision and now owns SEPH.  (Doc. 29 at 23).  The complaint, however, alleges two bases for Park's contractual liability under the Agreement:  (1) Park is the successor of Vision; and (2) Park undertook

the duty to fulfill Vision's contractual obligations.  (Doc. 1, ¶¶ 109-10).[3]  The plaintiff insists it has met its burden of pleading facts rendering these theories plausible, (Doc. 29 at 22-24), but the Court cannot agree.

The plaintiff's first theory is fatally contradicted by the complaint itself, which alleges that SEPH – not Park – is the successor of Vision.  (Doc. 1, ¶ 52). The second theory depends on a letter from Park notifying the plaintiff of the transfer of the Agreement from Vision.  (Doc. 29 at 24).  The plaintiff argues that Park therein "represented it would be bound by" the Agreement, (*id*.), but the document in fact states that "SE Property [not Park] would succeed by operation of law to the rights and obligations of Vision under the Participation Agreement." (Doc. 1, Exhibit H).  As to Park's own status, the letter states only that SEPH is "a wholly-owned subsidiary of Park," (*id*.), and, as noted, the plaintiff concedes that such a status is legally inadequate to saddle the parent with liability on its subsidiary's contracts.[4]

For the reasons set forth above, Park is entitled to dismissal of the plaintiff's claim against it for breach of contract.

### 2. Absence of contractual obligation.

The complaint identifies nine ways that SEPH and Vision, its predecessor, breached the Agreement.  (Doc. 1, ¶ 112).  The defendants argue that Count One should be dismissed to the extent it depends on four of these.  (Doc. 24 at 12-14).

The complaint alleges breach by:  (1) failure to apprise the plaintiff and/or Crescent of additional loans made to the guarantors; (2) failure to obtain the

---

[3] The plaintiff in brief lists other theories under which a non-party can be bound by a contract, (Doc. 29 at 23 n.7), but they are irrelevant since neither the complaint nor the plaintiff's brief invokes any of them.

[4] The plaintiff asserts vaguely that "other facts alleged about Park's direct involvement with Vision and its loans" render it plausible that Park undertook the duty of fulfilling Vision's obligations under the Agreement.  (Doc. 29 at 24).  The plaintiff identifies, and the Court detects, no allegations that could render plausible the allegation that Park became bound by the Agreement for purposes of a claim for breach of contract.

plaintiff's consent to the merger of Vision into SEPH; and (3) failure to obtain the plaintiff's consent to terminating Vision's existence. (Doc. 1, ¶ 112.a - c). The defendants assert, and the Court agrees, that the Agreement imposes no such obligations. The plaintiff offers no rebuttal, noting only that its claim survives as to those breaches the defendants have not challenged. (Doc. 29 at 24-25).

Count One also alleges breach by failure to repurchase the plaintiff's participation interest. (Doc. 1, ¶ 112i). The defendants repeat their argument that the complaint alleges no written notice of default or commencement of a proceeding to terminate Vision's existence. (Doc. 24 at 14). This argument fails for reasons stated in Part I.A.

For the reasons set forth above, the defendants are entitled to dismissal as to the breaches alleged in paragraph 112.a - c but not as to the breach alleged in paragraph 112.i.

### C. Tort Claims.

The defendants raise several arguments as to some or all of the complaint's tort claims, which the Court considers in turn.

### 1. Standing.

Counts Two and Three are based only on Park's conduct vis-à-vis the plaintiff. (Doc. 1 at 28-31). Counts Four through Seven, however, allege misconduct directed at both the plaintiff and Crescent. (*Id*. at 31-38).[5] The defendants assert that these counts must be dismissed because the complaint fails to allege the plaintiff's standing to assert Crescent's tort claims. (Doc. 24 at 14-15). Unlike the argument addressed in Part I.A, this standing argument implicates

---

[5] The defendants say this is also true of Count Eight, but the only wrongdoing alleged therein is that Park "intentionally interfered with the contract between Vision and Renasant … by terminating Vision's existence and merging Vision into SE Property without Renasant's consent." (Doc. 1, ¶¶ 154-55). This misconduct could not possibly implicate Crescent, which had failed 19 months before the merger of Vision into SEPH.

not a constitutional requirement of standing but a prudential one – that the plaintiff generally should assert its own rights and not those of others.  *E.g., KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1266 (11th Cir. 2006).

On its face, the defendants' argument stretches too far, since it seeks dismissal of the counts in their entirety, even though each of them alleges that the defendants' misconduct was also directed at the plaintiff, whose prudential standing is unquestionable.  But the defendants' argument fails as to Crescent as well.

The defendants urge that the complaint fails to allege the plaintiff's acquisition of the right to pursue Crescent's tort claims.  But the complaint alleges that the plaintiff acquired Crescent's assets by P&A after Crescent failed, (Doc. 1, ¶ 62), and nothing in that allegation limits the plaintiff's acquired assets to contracts and contract claims as opposed to tort claims.[6]

The defendants next suggest that any allegation that the plaintiff acquired Crescent's tort claims is implausible under *Twombly* and *Iqbal*.  But merely citing a case for the proposition that (under New York law) an assignment of contract claims does not "automatically" carry with it an assignment of tort claims, (Doc. 24 at 14), does nothing to render it implausible that the FDIC as receiver would transfer the tort claims of a failed bank to an assuming institution such as the plaintiff.  The complaint's allegation of a transfer of assets pursuant to a P&A renders it plausible that Crescent's tort claims were included in the transfer.

In their reply brief, the defendants attempt to counter this plausibility by addressing the terms of the P&A itself.[7]  They admit that the P&A actually provides for the general transfer of Crescent's tort claims to the plaintiff but note

---

[6] The defendants incorrectly read the complaint as alleging that the plaintiff acquired only Crescent's rights under the Agreement, but the very paragraph to which they cite specifically alleges that the plaintiff received other assets as well.

[7] The P&A is not appended to the complaint, but the plaintiff cited to the online version in its opposition brief.  (Doc. 29 at 22 n.6).

11

that it excludes "certain tort claims" from the transfer.  (Doc. 30 at 8).  The defendants make no argument that the tort claims brought by the plaintiff are among the "certain tort claims" excluded from transfer; instead, they assert that the complaint should have specifically alleged that the asserted tort claims were not excluded from transfer.  The defendants cite no authority for the proposition that a complaint must not only allege facts rendering plausible its claim for relief but must also expressly negative all contrary possibilities.  Nor do they explain why the Court should address an argument they could have raised initially[8] but withheld until their reply brief.[9]

Similarly, the defendants point to language in the P&A that requires the plaintiff to obtain the FDIC's consent before instituting suit in certain situations, and they object that the complaint fails to allege compliance with this provision.  (Doc. 30 at 8).  This argument has nothing at all to do with the plaintiff's standing to raise Crescent's tort claims.  It therefore represents a wholly new argument raised for the first time on reply.  For reasons already explained, the Court declines to consider this tardy argument.

For the reasons set forth above, the defendants are not entitled to dismissal of any count for want of prudential standing.

## 2.  Economic loss rule.

"The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."  *General Electric Co. v. Lowe's Home Centers, Inc*., 608 S.E.2d 636, 637 (Ga. 2005).  The defendants argue that this rule bars the plaintiffs' tort claims against SEPH.  (Doc. 24 at 15-18).

---

[8] The P&A is freely available on the FDIC's website.

[9] "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply."  *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining rationale).

The threshold question is whether, as the defendants argue, Georgia substantive law governs the plaintiff's tort claims.[10]  "In diversity cases, the choice-of-law rules of the forum state determine what law governs …." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). "It is well settled that the traditional conflict rule of lex loci delicti applies to tort actions brought in this jurisdiction." *Norris v. Taylor*, 460 So. 2d 151, 152 (Ala. 1984).  "Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Id.*; *accord Fitts v. Minnesota Mining & Manufacturing Co.*, 581 So. 2d 819, 820, 823 (Ala. 1991) (declining to abandon the rule of lex loci delicti).

The plaintiff's claimed losses are entirely financial.  "Courts in Alabama faced with financial injury claims have consistently held, under the doctrine of lex loci delicti, that the law of the state where a plaintiff suffered its alleged financial injury arising from the common law tort claim is the law that governs those claims." *Alabama Aircraft Industries, Inc. v. Boeing Co.*, 2013 WL 1178720 at *8 (N.D. Ala. 2013); *accord Chambers v. Cooney*, 2007 WL 2493682 at *11 (S.D. Ala. 2007).  Because its headquarters and all of its branches were located in Georgia,[11] Crescent could have suffered injury only in that state.  Thus, to the extent the plaintiff's tort claims are based on injury suffered by Crescent, they are governed by Georgia law.[12]

---

[10] The Agreement contains an Alabama choice-of-law provision, but the defendants argue persuasively that the provision applies only to contract claims, not tort claims.  (Doc. 24 at 7).  The plaintiff offers no disagreement with the defendants' assessment.

[11] Office of Inspector General, FDIC, Report No. MLR-11-011 at 1 (January 2011), fdicoig.gov/reports11%5C11-011.pdf.  A court may make factual findings antecedent to resolving a choice-of-law issue.  *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1239 (11th Cir. 2007).

[12] There has been no assertion or showing that the plaintiff's own injury was also experienced in Georgia.

The plaintiff objects without amplification that the defendants "did not attempt to explain why Alabama choice of law rules support characterizing the issue as one of tort rather than one of contract." (Doc. 29 at 27). But it is the plaintiff that has failed to explain how claims for fraud, suppression, negligence and wantonness could be construed as contract claims for choice-of-law purposes. *See, e.g., Lifestar Response, Inc. v. Admiral Insurance Co.*, 17 So. 3d 200, 213 (Ala. 2009) (claims of negligence and wantonness are governed by lex loci delicti); *Williams v. Norwest Financial Alabama, Inc.*, 723 So. 2d 97, 99, 101 (Ala. Civ. App. 1998) (claims of fraudulent misrepresentation, fraudulent suppression, negligence and wantonness are governed by lex loci delicti).

The plaintiff also notes in passing that "the location of the injury is not the only consideration taken into account" in determining the governing substantive law for a tort claim. (Doc. 29 at 27 n.9). But the plaintiff identifies no other considerations of which the Court should take note. In the single authority cited by the plaintiff, the only other consideration recognized is the forum state's public policy, which may contradict the foreign jurisdiction's substantive law with sufficient force to justify refusing to apply that law. *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, ___ F. Supp. ___, 2012 WL 4339316 at *31 (N.D. Ala. 2012). The plaintiff has identified no Alabama public policy that could justify ignoring Georgia's economic loss rule.

Remaining for consideration is the scope of the economic loss rule as applied to the plaintiff's tort claims. As noted, the rule protects only one in a contractual relationship with the plaintiff. Since Park was not in a contractual relationship with Crescent, it cannot benefit from the economic loss rule. The defendants do not argue otherwise.[13]

"The economic loss rule is inapplicable in the presence of passive concealment or fraud." *Holloman v. D.R. Horton, Inc.*, 524 S.E.2d 790, 797 (Ga.

---

[13] The defendants expressly limit application of the rule to Counts Four through Seven as asserted "against SEPH." (Doc. 24 at 15).

App. 1999).  This exception would appear to render problematic application of the rule to Counts Four and Five.  The defendants do not cite *Holloman* or any other Georgia case addressing the application of the rule to fraud claims.  Instead, they cite two Florida cases and announce that "Georgia and Florida have identical economic loss rules."  (Doc. 24 at 15-16 & 16 n.7).  The case they quote for this proposition did not in fact embrace it; instead, the Court in *Foxworthy, Inc. v. CMG Life Services, Inc*., 2012 WL 1269127 (N.D. Ga. 2012), stated only that "[t]he parties *concede* that Georgia and Florida's economic loss rule is identical." *Id*. at *2 n.2 (emphasis added).  The Court is unswayed by the unexplained opinions of litigants in other actions.  Without addressing Georgia's "misrepresentation exception" to the economic loss rule, *Holloman*, 524 S.E.2d at 796, the defendants cannot obtain partial dismissal of Counts Four and Five under that rule.

The economic loss rule does not apply when the law imposes a duty independent of any duty owing under the contract.  Thus, a claim for negligent construction is not barred by the rule, since "[t]his cause of action arises in tort and exists independently of any claim for breach of contract."  *Rowe v. Akin & Flanders, Inc*., 525 S.E. 2d 123, 126 (Ga. App. 1999) (internal quotes omitted). The only case cited by the defendants that applies the economic loss rule to a negligence claim recognizes precisely this distinction.  *Rosen v. Protective Life Insurance Co*., 20120 WL 2014657 at *9 (N.D. Ga. 2010).  The defendants, however, have failed to demonstrate that the duties alleged by the plaintiff spring exclusively from the Agreement and not (or not also) from "a duty owed to plaintiff independent of [the] contract to avoid harming him."  *Id*. (internal quotes omitted).[14]  Without doing so, they cannot obtain dismissal of any claim or portion of any claim under the economic loss rule.

---

[14] The defendants state only that the alleged tort duties to exercise reasonable care and to act in a commercially manner are "interwoven with" the parties' rights and obligations under the Agreement.  (Doc. 24 at 17).  This may be a necessary condition to

For the reasons set forth above, the defendants are not entitled to dismissal of any portion of Counts Four through Seven based on Georgia's economic loss rule.

### 3. Particularity.

The defendants argue that Counts Two through Five should be dismissed for failure to plead fraud with the particularity demanded by Rule 9(b). (Doc. 24 at 18-25).[15]

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal quotes omitted). The defendants invoke this standard. (Doc. 24 at 6).

### i. Count Two.

Count Two alleges that Park defrauded the plaintiff when, on or about December 29, 2011, its agents intentionally misrepresented that Park was able to honor Vision's obligations under the Agreement and that Park would do so. (Doc. 1, ¶ 115). The defendants complain that Count Two does not identify what individual made this misrepresentation, what precisely was communicated, or

---

application of the economic loss rule, but it is not a sufficient one, since "[i]t is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of [the] contract to avoid harming him." *Rosen*, 2010 WL 2014657 at *9 (internal quotes omitted). The question is not whether the alleged duties are similar to contractual duties but whether the law imposes such duties regardless of whether the contract does so. The defendants have not addressed this critical question.

[15] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

through what medium the message was sent.  (Doc. 24 at 21).  The factual allegations of the complaint, however, explicitly credit Brett Baumeister with the misrepresentation, identify the medium as a December 29 e-mail to Clark Blackwell, and quote the document.  (Doc. 1, ¶¶ 83-85).  No greater particularity is possible.

Count Two alleges that Baumeister's representation was false because Park had no intention of honoring Vision's obligations.  (Doc. 1, ¶ 116).  The defendants object that the complaint does not include specific facts demonstrating the representation's falsity, (Doc. 24 at 21), but they have failed to offer any authority for the proposition that Rule 9(b) requires particularity in this respect or that the allegation concerning Park's intentions would not satisfy any such requirement.

Finally, the defendants complain that Count Two fails to allege with particularity that Baumeister or the other individuals listed in Count Two knew the representation was false or that they intended not to honor the Agreement.  (Doc. 24 at 21-22).[16]  The defendants, however, have not shown that Rule 9(b) requires particularity in the pleading of such matters.  On the contrary, that rule explicitly provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally."  The defendants' own authority makes the same point, in the sentence immediately preceding that quoted by the defendants.  *Mizzaro*, 544 F.3d at 1237.[17]

For the reasons set forth above, the defendants are not entitled to dismissal of Count Two based on a failure to comply with Rule 9(b).

### ii.  Count Three.

---

[16] Count Two alleges these matters generally.  (Doc. 1, ¶¶ 115-17).

[17] The defendants cast all on an unpublished, unreasoned decision of the Tenth Circuit.  (Doc. 24 at 20).  That case appears irreconcilable with Rule 9(b) and Eleventh Circuit precedent; certainly the defendants have not attempted a reconciliation.

Like many suppression claims, Count Three is the flip side of the misrepresentation claim found in Count Two.  Specifically, Count Three alleges that Park was under a duty to disclose that it would not ensure that the obligations under the Agreement were honored but that it wrongfully concealed this fact from the plaintiff.  (Doc. 1, ¶¶ 122-24).  The defendants argue that Count Three does not identify what individuals were responsible for this concealment, what exactly they concealed, and when they concealed it.  (Doc. 24 at 22).  The complaint, however, explicitly states what was concealed.  (Doc. 1, ¶¶ 123-24).  Moreover, the complaint specifically identifies the four individuals responsible for Baumeister's misrepresentation and the date on which it occurred.  (*Id*., ¶ 115).  Since Count Three is the flip side of Count Two, and since Count Two's allegations are incorporated into Count Three, (*id*., ¶ 121), Count Three clearly alleges that these four individuals concealed the facts on or about December 29, 2011.[18]

The defendants next repeat their argument that the plaintiff is required to plead knowledge and intent with particularity, (Doc. 24 at 22), an effort that fails for reasons previously stated.

Finally, the defendants argue that Count Three fails to provide any factual basis for its allegation that Park owed the plaintiff a duty of disclosure.  (Doc. 24 at 22-23).  Assuming without deciding that Rule 9(b) requires such detail, Count Three alleges that Park's duty to disclose derives from its superior knowledge of the facts, the duties imposed by the Agreement, its degree of supervision over Vision and SEPH, and the duties it voluntarily assumed with respect to providing

---

[18] It is possible to read *Mizzaro* and like cases as not requiring a plaintiff to plead the time of an omission.  *See* 544 F.3d at 1237 (Rule 9(b) is satisfied if the plaintiff alleges "the time and place of each such *statement* and the person responsible for making (or, in the case of omissions, not making) same") (emphasis added).  Because the complaint does identify a time of this omission, the Court need not resolve the issue.  And because the defendants have not established that the plaintiff must identify a specific time of an omission, the Court does not decide whether the plaintiff can rely on an ongoing concealment despite its failure to plead specific inclusive dates.

such information.  (Doc. 1, ¶ 122).  Assuming without deciding that this listing would not satisfy any particularity requirement under Rule 9(b), the complaint provides volumes of information concerning Park's superior knowledge of its own intentions, its elaborate supervision (real or at least postured) of Vision and SEPH, and its voluntary act of providing information about its intentions to the plaintiff.  (*E.g., id.*, ¶¶ 21-25, 32-33, 35, 40, 46, 51, 78-86).[19]

    For the reasons set forth above, the defendants are not entitled to dismissal of Count Three based on a failure to comply with Rule 9(b).


    ### iii.  Counts Four and Five.

    Count Four, like Count Two, is a fraud claim.  Unlike Count Two, Count Four names both Park and SEPH as defendants.  Also unlike Count Two, Count Four alleges that misrepresentations were made to Crescent as well as to the plaintiff.  (Doc. 1, ¶¶ 130-33).

    Count Four first alleges that Lyndsay Job, "[i]n 2009, 2010 and 2011," made certain misrepresentations to Crescent and/or the plaintiff.  (Doc. 1, ¶ 130).  The Court agrees with the defendants that neither Count Four nor the antecedent allegations of the complaint provide the slightest detail concerning when Job made these representations or by what medium.[20]  And although Job is alleged generally to have misrepresented the financial condition and indebtedness of the borrower and guarantors, "precisely what statements were made" is left unstated.  This portion of Count Four grossly violates Rule 9(b).

    Count Four next alleges that, in early 2012, Baumeister and Frank Wagner misrepresented by "correspondence" the financial condition and indebtedness of

---

[19] In view of these allegations, it cannot be relevant that the complaint "does not cite any section of the Agreement that purportedly imposes a duty to disclose" on Park.  (Doc. 24 at 23).

[20] The only communication by Job alleged in the complaint is a July 2010 letter that contains none of the alleged misrepresentations.  (Doc. 1, ¶ 59; *id.*, Exhibit G).

the borrower and guarantors.  (Doc. 1, ¶ 131).  The only correspondence from Baumeister alleged in the complaint, however, occurred in 2011, and the only correspondence from Wagner addressed only the status of property taxes on the collateral.  (*Id.*, ¶¶ 83, 92-94).  These allegations display all the infirmities recounted in the preceding paragraph, and this portion of Count Four equally violates Rule 9(b).

Finally, Count Four alleges that, in early 2012, Wagner misrepresented that property taxes on the collateral were not past due.  (Doc. 1, ¶ 131).  The defendants raise the same arguments, but as to this allegation they fail, because the complaint elsewhere alleges that, by e-mail to the plaintiff dated March 27, 2012, Wagner falsely represented that the property taxes were current.  (*Id.*, ¶¶ 92-94).[21]

Count Five is the suppression counterpart to Count Four.  (Doc. 1, ¶¶ 137-42).  Because it is no more carefully drawn than the fraud claim, Count Five violates Rule 9(b) the same extent.

For the reasons set forth above, the defendants are entitled to dismissal of Counts Four and Five based on a failure to comply with Rule 9(b), except those

---

[21] The defendants profess confusion as to whether this portion of Count Four is asserted against both of them and whether it implicates communications with Crescent. (Doc. 24 at 24).  Since Wagner is alleged to be Park's agent and commercial lender, (Doc. 1, ¶¶ 51, 87, 115), this portion of Count Four is necessarily limited to Park.  And since the communication occurred in 2012, almost two years after the plaintiff acquired Crescent's assets, (*id.*, ¶¶ 60-62), it is necessarily limited to communication with the plaintiff.

To the uncertain extent the defendants argue for dismissal because the individual recipient of the e-mail is not named, they have not shown that *Mizzaro* requires such precision.  *See* 544 F.3d at 1237 (requiring identification of "the person responsible for making (or, in the case of omissions, not making) same," but not mentioning identification of the recipient).  Even if such an allegation is required, they have not shown that a complaint lacking in only this detail – which a review of their own e-mail records would supply – is subject to dismissal.

portions of Counts Four and Five asserting fraud and suppression regarding the status of property taxes on the collateral.[22]

### 4. Intentional interference.

Count Eight alleges that Park intentionally interfered with the plaintiff's contractual relations with Vision.  (Doc. 1 at 37-38).  The defendants argue that Park, as Vision's parent, is legally incapable of committing such a tort.  (Doc. 24 at 25-26).  For this proposition, they rely exclusively on Georgia law.  As discussed in Part I.C.2, however, the substantive law governing the plaintiff's tort claims is the law of the place where the injury occurred.  Injury to Crescent occurred in Georgia, but Count Eight is based on injury experienced directly by the plaintiff when Park terminated Vision's existence without the plaintiff's consent in 2012, long after Crescent ceased to exist.  Because the defendants have offered nothing to show that this injury to the plaintiff occurred in Georgia, their authorities are irrelevant.

In their reply brief, the defendants switch to Alabama and Mississippi authorities.  (Doc. 30 at 13-14).  As it has stated before, the Court will not entertain new arguments first raised on reply.  Even were the Court inclined to do so, the defendants have not established that Alabama or Mississippi furnishes the substantive law governing the plaintiff's tort claims to the extent they are based on injuries experienced directly by the plaintiff.

For the reasons set forth above, the defendants are not entitled to dismissal of Count Eight.

---

[22] The Court does not warrant that it has identified all the Rule 9(b) deficiencies in these counts, but those that are identified are sufficient to require dismissal.

**II.  Motion for More Definite Statement.**

Calling the plaintiff's pleading a "shotgun complaint," the defendants request that the plaintiff be required to replead under Rule 12(e).  (Doc. 24 at 26-27).

"The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  The instant complaint employs incorporation by reference and hence meets this technical definition of a shotgun complaint.

But Rule 12(e) does not authorize repleader simply because its counts incorporate earlier paragraphs; instead, the pleading must be "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Certainly that standard may sometimes be met by a shotgun complaint, but the defendants have not shown it to be satisfied in this case; indeed, they have not attempted to do so.  Instead, they advance the erroneous position that the mere usage of incorporation of itself requires repleader.  (Doc. 24 at 27).  This is incorrect, and the Court's familiarity with the complaint permits it to comfortably draw the conclusion that its use of incorporation by reference does not impair the defendants' ability to frame a responsive pleading for purposes of Rule 12(e).[23]

The defendants also object that the complaint "has improperly combined the parties and non-party entities into single subjects and objects," making it "difficult … to understand" which defendant allegedly did what and whether they did it to the plaintiff or to Crescent.  (Doc. 24 at 27).  As noted, Crescent's failure

---

[23] As the defendants' own authority states, relief under Rule 12(e) is available to address a shotgun pleading when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. District Board of Trustees*, 77 F.3d 364, 366 (11th Cir. 1996).  That standard is not remotely approached by the complaint in this action.

and the plaintiff's purchase of its assets both occurred on July 23, 2010.  (Doc. 1,
¶¶ 60-62).  Thus, any conduct occurring before that date necessarily was directed
at Crescent, and any conduct occurring after that date necessarily was directed at
the plaintiff; there is no confusion on this score.  And it can hardly be confusing
for the complaint to allege that Park engaged in certain conduct, that SEPH
engaged in certain conduct, and that both defendants engaged in certain conduct.
Notably, the defendants identify not a single example of an allegation so vague or
ambiguous that they cannot respond to it.

 For the reasons set forth above, the defendants' motion for more definite
statement is due to be denied.


### III.  Motion to Strike Jury Demand.

 The Agreement provides that "Participating Bank waives, to the fullest
extent permitted by law, any right to trial by jury on any issues or claims arising
under this Agreement."  (Doc. 23, Exhibit 1, § 20).  Alabama law governs the
construction of this clause.  (*Id*.).  The defendants argue that the provision requires
that the plaintiff's jury demand be stricken "in its entirety."  (Doc. 24 at 28-30).

 As resolved in Part I.B.1, Park is not a party to the Agreement.  The
defendants have offered no explanation how Park, as a stranger to the contract,
may nevertheless take advantage of its jury waiver.

 As the defendants acknowledge, (Doc. 24 at 28-29), the phrase "arising
under" in a jury waiver provision "exclude[s] claims that d[o] not require a
reference to, or a construction of, the underlying contract."  *Ex parte Cupps*, 782
So. 2d 772, 776 (Ala. 2000).  But it may exclude even more.  *See id*. (to be
covered by such a provision, the claim "must at the very least" require reference to
or construction of the contract) (internal quotes omitted).  The defendants assume
that the plaintiff's tort claims require such reference to or construction of the
Agreement, but they offer no analysis of the complaint or its claims to support this

proposition, and the Court will not embark on such a journey on its own.[24]  Nor do the defendants acknowledge, much less negate, the possible existence of additional requirements for waiver as implied by *Ex parte Cupps*.

A claim for breach of contract does fall within the scope of an "arising under" jury waiver.  *Ex parte Cupps*, 782 So. 2d at 777.  Thus, the defendants' motion is due to be granted with respect to the plaintiff's claim for breach of contract against SEPH.  In all other respects, the motion is due to be denied.

## IV.  Motion for Leave to Amend.

The plaintiff seeks leave to amend the complaint to revive the dismissed portions of Counts Four and Five, (Doc. 29 at 30), which the Court construes as a motion for such relief.[25]  Leave to amend at this stage of the proceedings is to be granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be given under this rule "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (internal quotes omitted). The burden is on the defendants to establish one or more of these exceptions to the bias favoring amendment.[26]  The

---

[24] The defendants simply list without discussion three paragraphs of the complaint, none of which obviously satisfy *Ex parte Cupps*.

[25] *See generally* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

[26] *Spanish Broadcasting System, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) ("The Supreme Court has emphasized that leave to amend must be granted absent a specific, significant reason for denial ...."); *accord Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 623 (11th Cir. 1983).

defendants, however, raise no objection to the plaintiff's motion.  Accordingly, the Court concludes that the motion is due to be granted.[27]

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is due to be **granted** with respect to Count One to the extent that claim is asserted against Park; **granted** with respect to Count One to the extent based on the matters asserted in paragraph 112.a - c; and **granted** with respect to Counts Four and Five, except to the extent those claims allege misrepresentation or suppression concerning property taxes on the collateral.  In all other respects, the defendants' motion to dismiss is **denied**.

For the reasons set forth above, the defendants' motion for more definite statement is **denied**.

For the reasons set forth above, the defendants' motion to strike jury demand is **granted** with respect to Count One and is in all other respects **denied**.

For the reasons set forth above, the plaintiff's motion for leave to amend is **granted**.  The plaintiff is **ordered** to file and serve its amended complaint on or before **April 22, 2013**.

DONE and ORDERED this 10th day of April, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[27] *See also Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (former 5th Cir. 1981) ("[D]ismissal for failure to comply with Rule 9(b) is almost always with leave to amend.").